IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. BK25-80538 |
| | ) | |
| MICHAEL WATSON | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

**Order Avoiding Judicial Lien**

This matter is before the court on the evidentiary hearing on the motion of the debtor Michael Watson to avoid the judicial lien of David Hospodka, which lien the debtor asserts impairs the debtor's homestead exemption. Hospodka asserts the homestead was abandoned. Patrick Turner appeared for the debtor. David Skalka appeared for Mr. Hospodka. The motion is granted. The debtor is entitled to claim the homestead exemption. The evidence supports he did not physically abandon or intend to abandon the homestead. Hospodka's lien is avoided.

**Findings of Fact**

The debtor purchased a house on Pinewood Circle in Omaha in 2012. He later married his wife, Kayla. The house became the family home of the debtor, Kayla, and their children. But the marriage deteriorated. In December 2023, the debtor and Kayla agreed to separate. Kayla filed for divorce in May 2024. The debtor and Kayla agreed Kayla would continue to reside in the family home with the children until the divorce was final. During the separation, the debtor lived and worked outside Nebraska in Texas, Louisiana, Tennessee, and Oklahoma. He returned to Omaha in 2024 after suffering a heart attack. When he returned, he lived at campsites and in hotels, until May 2024 when he rented a house in Omaha with his new girlfriend on 41st Street.[1]

Despite living places other than his Pinewood home, the debtor asserts he did not intend to abandon homestead rights in the home. To support his

---

[1] The lease term for the rental is May 5, 2024, to May 31, 2025. The debtor's son is listed as a resident on the lease. On April 22, 2025, the debtor's girlfriend signed an addendum to the lease extending the term to May 31, 2026. The debtor's name is not on the addendum, and he did not sign it. The debtor testified his understanding is he is no longer a tenant because he did not sign the addendum.

contention, the debtor testified he intended to return. He kept his personal property, other than clothing and work items, at the home. His driver's license lists the home as his residence. He remained liable for most utility bills. He never changed his address with the post office. He continued to receive mail at his home. His mortgage loan is in default, but he wants to keep the home and is working with the lender to do so. But for the divorce, he would not have moved out. He left only because at the time he thought it in the best interest of his children they live in the family home with their mother.

On January 6, 2025, as part of their divorce action, the debtor filed a motion requesting the state district court order the home be sold.[2] To the debtor's surprise, Kayla consented. On February 13, 2025, the state court entered an order requiring the home immediately be listed for sale. In the order, Kayla was granted exclusive possession until March 10, 2025. The court ordered the sale proceeds pay the first mortgage with the balance held in escrow pending further order. The debtor and Kayla did not list their home for sale. Instead, on March 7, 2025, Kayla moved out. The debtor moved back in.[3] The home is still subject to the order to sell.

After the debtor returned to his home, he spent nights at both the home and at the house his girlfriend continued to lease. On Friday, May 30, 2025, the debtor texted Kayla, "I'm going to list the house early next week." But he did not list it. On Monday, June 2, 2025, he filed his bankruptcy petition, claiming the homestead exemption.

Hospodka contends the debtor abandoned the homestead and never reestablished it. Hospodka hired a Douglas County constable to stake out the debtor's post-petition living arrangements. The constable testified he observed the home on Pinewood and rented house on 41st Street between June 23 and July 2, 2025. From the street, he observed the Pinewood home twice and the 41st Street rental every other day. His observations occurred in the morning. Each lasted about an hour. He reported seeing no signs of the debtor at the Pinewood home over the two days. Although he did not see the

---

[2] In the motion the debtor represents to the state court, "the parties bought said property on or about September 23, 2013, and have jointly resided there as their principal residence since the acquisition until May of 2024."

[3] The debtor testified he filed the motion to sell the property as part of a strategy to move the divorce along. He also testified he believed the sale order could be ignored if he and Kayla agreed.

debtor at the 41st Street rental, the constable reported "movement" at the rental of vehicles sometimes used by the debtor. On August 3, 2025, the constable attempted to serve a subpoena on the debtor's girlfriend at the rental. The debtor emerged and escalated, screaming, "You are terrifying my children". The debtor ordered the constable, "Get off my property".

Kayla testified she moved out of her Pinewood home because it required too much maintenance. Since leaving, she exchanged children with the debtor for visitation at the rental, but not the Pinewood home. She did not quantify the number of times an exchange occurred at the rental. But she testified exchanges primarily occurred at the children's school. She did not know whether the children spent any time at the Pinewood home after she vacated.

To support their claims, the parties offered competing documentary evidence, all of which corroborated oral testimony the debtor physically lived in various places at various times.[4]

The debtor seeks to avoid the judgment lien Hospodka obtained against the home on April 15, 2024, in the original principal amount of $304,799.56, plus interest at 12% per annum. As of the petition date, the judgment is $346,185.49. On the petition date, the house was subject to a first position mortgage lien in favor of Rocket Mortgage in the amount of $135,220.51. A second judgment was entered against the debtor on February 21, 2025, in favor of Streamline Federal Credit Union in the amount of $8,810, plus court costs of $77, and accruing interest at 6.2820%. As of the petition date, the judgment of SFCU equals $9,040.14.[5] SCFU's judgment was registered with

---

[4] The debtor offered prepetition documents, including a copy of his driver's license issued March 27, 2025 (Doc. #41); a September 7, 2023, deposition where he stated he resided in Texas and his Pinewood home (Doc. #40); and certificates of service on two judgment orders, one entered February 21, 2025 (Doc. #35), and the other entered on April 15, 2024, in favor of Hospodka (Doc. #36). Other documents were post-petition, including a paystub (Doc. #37), a credit report (Doc. #38), and a utility invoice (Doc. #43).

Hospodka offered Kayla's complaint for dissolution of marriage filed May 3, 2024, listing Texas as the debtor's residence (Doc. #42); the debtor's counterclaim filed September 11, 2024, listing the 41st Street rental as his residence (Doc. #42); and a motion to reconsider a garnishment the debtor filed in state court on March 11, 2025, also listing the rental as his residence (Doc. #54).

[5] The debtor's brief contains slightly different judgment numbers. The debtor did not offer a calculation of the judgment by the state district court clerk. The debtor

the Douglas County District Court on March 2, 2025, creating a lien junior to Hospodka's lien. The parties stipulated, as of June 2, 2025, the date the debtor filed his bankruptcy case, the debtor's home was worth $312,000.

## Conclusions of Law

Hospodka contends the debtor abandoned his homestead. He further contends abandonment was decreed by the state court when it ordered the house sold, depriving this court of jurisdiction under *Rooker-Feldman*. He also contends the debtor could not reacquire a homestead when he returned to the home in March 2025 because there is no evidence the debtor resided in the home with his family. Hospodka's contentions are not warranted. The debtor is entitled to a homestead exemption in his Pinewood home.

### *Rooker-Feldman*

*Rooker-Feldman* does not apply in this case because the state court judgment is not inconsistent with the claim of homestead. Under *Rooker-Feldman* federal courts lack subject matter jurisdiction over "challenges to decisions made by state courts in judicial proceedings." *Cawley v. Celeste (In re Athens/Alpha Gas Corp.)*, 463 B.R. 883, 887 (B.A.P. 8th Cir. 2012).

> "*Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." The state and federal claims need not be identical. A lower federal court may not consider a claim that is "inextricably intertwined" with a claim addressed by a state court. A federal claim is inextricably intertwined with a state claim "if the federal challenge succeeds only to the extent that the state court wrongly decided the issues before it."

*Id.* (citations omitted).

*Rooker-Feldman* is a narrow doctrine. The Supreme Court "confined it to":

---

appears to have accrued interest on court costs. Nebraska law allows "interest on *decrees* and *judgments*". Neb. Rev. Stat. § 45-103. A plaintiff is separately entitled to costs as a matter of course. *Id.* § 25-1708. But costs are in addition to and not part of the judgment. *See, e.g., Abboud v. Papio-Missouri River Nat. Res. Dist.*, 571 N.W.2d 302 (Neb. 1997) (holding attorney's fees in condemnation actions do not accrue interest because they are taxed as costs).

> cases of the kind from "which the doctrine acquired its name." Key was that *Rooker* and *Feldman* each involved a party who filed an action in federal court to overturn an "injurious state-court judgment." From that basic observation, the modern Rooker-Feldman rule was born: dismissal follows only when the federal-court action is "brought by [a] state-court loser [ ] complaining of injuries caused by [a] state-court judgment [ ] rendered before the district court proceedings commenced and inviting district court review and rejection of th[at] judgment."

*Sutter & Gillham PLLC v. Henry*, 146 F.4th 699, 702 (8th Cir. 2025) (citations omitted).

The avoidance of Hospodka's lien does not void or overturn the state court judgment. Avoidance is in no way inconsistent with the state court sale order. The order did not sell the home. The debtor owned the home when the bankruptcy was filed. The bankruptcy stayed the effect of the sale order. The debtor's interest in the home is property of the debtor's bankruptcy estate. During the stay, Hospodka's lien can be avoided without disturbing or overturning the order to sell. The state court remains free to enforce its order regardless of whether Hospodka's lien is avoided.

Moreover, under Nebraska statute, a sale of a homestead does not immediately destroy or abandon a party's homestead rights. Nebraska statute provides:[6]

> If the homestead be conveyed by the claimant, or sold for the satisfaction of any lien mentioned in section 40-103, the proceeds of such sale, beyond the amount necessary to the satisfaction of such lien, and not exceeding the amount of the homestead exemption, shall be entitled, for the period of six months thereafter, to the same protection against legal process and the voluntary disposition of the claimant which the law gives to the homestead.

---

[6] Hospodka cites Eighth Circuit precedent for the proposition willingness to sell property constitutes an abandonment. *See In re Gerrald*, 57 F.3d 652, 653 (8th Cir. 1995). *Gerrald* applies Arkansas law. Arkansas state courts have found abandonment where the parties "voluntarily agreed to list the property with a broker for sale at a reasonable price". *See Obenshain v. Obenshain*, 480 S.W.2d 567, 568 (Ark. 1972). But Arkansas statute does not contain the 6-month provision found in Nebraska's statute. And in *Obenshain*, the property was not only listed but also sold.

Neb. Rev. Stat. Ann. § 40-116. The sale order was entered February 13, 2025. The debtor filed his bankruptcy case and claimed his homestead exemption on June 2, 2025, which is within 6 months of the order to sell. If an actual sale would not have destroyed the debtor's homestead claim, an agreement or order to sell, both of which can be undone, cannot in and of itself destroy such rights. The order would not even have a preclusive effect on these proceedings, let alone invoke *Rooker-Feldman*. In interpreting the foregoing statute, this court previously rejected Hospodka's argument.

> Section 40–116, even for a certain time period, protects the proceeds of the sale of a homestead, whether the sale be voluntary or for the satisfaction of a lien. Therefore, even if the homestead of the debtors had been sold prior to the petition date, but within six months thereof, the $10,000 homestead exemption amount would be protected from creditors.
>
> In conclusion, the objection to the homestead exemption is denied.

*Matter of Roberts*, 211 B.R. 696, 698–99 (Bankr. D. Neb. 1997), *aff'd sub nom. In re Roberts*, 219 B.R. 235 (B.A.P. 8th Cir. 1998).

Likewise, the Nebraska Supreme Court has held homestead rights can only be divested by abandonment or actual *sale*.

> Where the homestead right has once become vested, by the party entering into possession, and enjoying the same for years, such rights, as against a debt incurred after the homestead right was acquired, can be divested only by *a sale* or abandonment

*Dennis v. Omaha Nat'l Bank*, 28 N.W. 512, 514 (Neb. 1886) (emphasis added) (noting if a family possessed a homestead and one spouse moved to another state, the homestead would remain exempt). An order to sell is not a sale. A listing for sale is not a sale. The debtor's request for an order to sell is simply a factor to consider in determining whether the debtor abandoned his homestead. *Rooker-Feldman* is not implicated.

*Abandonment*

Even though *Rooker-Feldman* does not apply, Hospodka contends the debtor abandoned his homestead. He bears the burden to prove both an intention to abandon and actual abandonment, by a preponderance of the evidence. *See Phifer v. Miller*, 45 N.W.2d 907, 909 (Neb. 1951).

> An intention to abandon and an actual abandonment must concur to establish the abandonment of a homestead interest. Where the evidence shows that the parties left the premises claimed as a homestead, without any intention of returning to it for the purpose of occupying it as a homestead, an abandonment of the homestead is established.

*Id.* (citations omitted).

As evidence of abandonment, Hospodka points to the following. The debtor requested the district court order the house be sold, to which his wife, Kayla, consented. He voluntarily moved out in December 2023. He leased another house with his girlfriend and may still be liable on the lease. Although the debtor testified he returned to his Pinewood home in March 2025 and slept there, he did not testify his children lived there with him after he returned. The debtor listed the rental as his residence on various documents, including documents filed in his divorce action. Post-petition, a constable did not see evidence the debtor was residing at the Pinewood home over a two-day period. When the constable tried to serve debtor's girlfriend at her apartment, the debtor yelled at the constable, "Get off my property," and "You are terrifying my children".

This court previously rejected claims of abandonment on similar facts. *See, e.g., Matter of Roberts*, 211 B.R. 696, 698 (Bankr. D. Neb. 1997) (finding no abandonment where married debtors contemplated a divorce and the sale of their home when they filed bankruptcy, and where they sold the home post-petition); *In re Sharon Michael*, No. BK99-80789 A, 1999 Bankr. LEXIS 2016, at *5 (Bankr. D. Neb. Nov. 16, 1999) (no abandonment where the debtor worked in Colorado before filing bankruptcy, maintained a rental apartment there, and received service of process there).

Likewise, the Nebraska Supreme Court has found no abandonment on stronger facts, for example where:

- The debtors left their farm homestead, rented a home in Wahoo, moved all their possessions from the farm, and operated a shoe store in Wahoo, but stated an intention to return to the farm. *See Edwards v. Reid*, 58 N.W. 202, 204–05 (Neb. 1894). The court held "removing from a homestead, and residing elsewhere, for the purpose of business, health, or pleasure, does not work an abandonment of the homestead, unless coupled with such removal is the intention not to return." *Id.*

- The debtor moved his family to another town to send his children to college, leased a house there, voted as a resident in the new town, and rented the homestead to another. *See Corey v. Schuster*, 62 N.W. 470 (Neb. 1895). The court found leaving household goods at the homestead and applying rents from the homestead to its mortgage supported the debtor's homestead claim.

The complete record in this case supports neither an intent to abandon or actual abandonment. Abandonment must be "*total, without any occupancy under claim of homestead.*" *Dennis v. Omaha Nat'l Bank*, 28 N.W. 512, 514–15 (Neb. 1886) (emphasis added). The debtor or Kayla always resided in their family home. They remained married at the time the bankruptcy was filed. The debtor's absence from the home beginning in 2023 was due to a marital dispute and divorce filing, it being agreed as in the best interest of the debtor's children, who also resided there. Even if he spent nights or resided at his girlfriend's apartment, the debtor returned to his home after Kayla moved out. Although the debtor and Kayla agreed to sell the house and obtained a court order to list it for sale, the house is not sold. The debtor's rental of a house with his girlfriend was temporary, regardless of whether he remains liable on the lease. The debtor's personal property has always been at his home. And Kayla did not testify she intended to abandon the home or her homestead rights.

*Reestablishment of Homestead*

Even if the debtor abandoned his homestead in 2023, he reestablished it before filing his petition. Exemptions are determined as of the time a debtor files a bankruptcy petition. *See Jencks v. AgVantage FS (In re Jencks)*, 671 B.R. 252, 257 (B.A.P. 8th Cir. 2025). When the debtor filed, he resided in his home.

Hospodka's argument the debtor could not reestablish his homestead because after he moved back in, he did not reside in the property *with his family*, is misplaced. Hospodka notes, the Nebraska Supreme Court, in construing the homestead exemption statute has held, "[T]he object of the homestead legislation is to conserve the family by 'keeping a roof over it[.]'" *Chambers v. Bringenberg*, 963 N.W.2d 37, 55 (Neb. 2021). This object or purpose dates to Nebraska's original homestead statute. Indeed over 100 years ago, the Nebraska Supreme Court noted the term "homestead" is not defined in statute. The meaning is clear and generally accepted – a homestead is "the home of the *family*":

> There was no attempt to define "homestead." The word was used in its general acceptation—the home of *the family,* the common–law castle of the citizen. The question of value did not enter into its description. The poor and the rich were treated alike. No one was to be deprived of his home.

*Meisner v. Hill*, 138 N.W. 583, 584 (Neb. 1912) (emphasis added).

At its inception, Nebraska's homestead act protected the family, and the homestead could only be claimed by the "head of the family". Neb. Comp. Stat. c. 36 § 5 (2d ed. 1881); *Dennis v. Omaha Nat'l Bank*, 28 N.W. 512, 514 (Neb. 1886) ("It is evidently the purpose of the statute of this state, as well as all others having similar laws, that the homestead exemption shall not be so much for the benefit of the person standing in the position of the head of the family as for the family itself." (citation omitted)).

But through the years the Nebraska Legislature tinkered with the homestead statutes, chasing perceived unfairness. In 2010 the statute was amended to allow all individuals over age 65 to claim a homestead. *See* 2010 Neb. Laws LB 907. In 2014 it was amended to remove all references to "head of a family," allowing all individuals to claim a homestead regardless of age or head of family status. 2014 Neb. Laws LB 964. Even after these two amendments, the generally accepted definition of homestead as a family home and the claiming mechanism in the statute led this court in 2024 to hold the 2014 amendment did not allow a married couple to double up their homestead exemption by each claiming a homestead in one parcel of property. *See Matter of Hudson*, 658 B.R. 680, 685 (Bankr. D. Neb. 2024). A claiming spouse could still only claim the homestead for the *family*, even if two unmarried individuals could, collectively, claim twice as much.

In 2024, the Legislature tinkered again. The statute still does not define a homestead. But as amended, the statute no longer quantifies the extent of the homestead and no longer provides a claiming mechanism. Instead, it affirmatively grants "each natural person" a homestead:

> *Each natural person residing in this state shall have* exempt from judgment liens and from execution or forced sale, except as provided in sections 40-101 to 40-116, *a homestead* not exceeding one hundred twenty thousand dollars in value consisting of the dwelling house in which the claimant resides[.]

Neb. Rev. Stat. § 40-101 (2024) (emphasis added).[7] The debtor is a natural person. He lives in his home. He claimed it as exempt. As a result of the amendment, it is not necessary the debtor's wife or children live with the debtor after March 2025. The Legislature's tinkering undermined, if not obliterated, the historical goal of "protection of the family". Indeed, under current law, a working-class widow with three children can claim $120,000. A single man with no kids can claim the same $120,000. A single man is not a family.[8]

*Impairment*

The debtor may avoid a judicial lien to the extent it impairs his homestead exemption. *See* 11 U.S.C. § 522(f)(1)(A). To avoid the lien the debtor must "(1) establish the creation of an avoidable lien under § 522(f)(1); (2) that affixed to exempted property under §522(b); and (3) that impaired a debtor's claimed exemption in the property." *See David G. Waltrip, LLC v. Sawyers (In re Sawyers)*, 2 F.4th 1133, 1137 (8th Cir. 2021). The debtor has the burden of proof. *Id*. Section 522(f)(2)(A) contains the formula to calculate the extent to which a lien impairs a debtor's homestead exemption. The formula is:

> The amount of the judicial lien +
> The amount of all other liens on the property +
> The amount of debtor's homestead exemption absent any liens on property =
> Sum −
> The value of the debtor's interest in the property absent any liens =

---

[7] Before 2024, the statute stated, "A homestead not exceeding sixty thousand dollars in value shall consist of the dwelling house in which the claimant resides … and shall be exempt from judgment liens and from execution or forced sale…." Neb. Rev. Stat. § 40-101 (2023).

[8] This opinion should not be read as a criticism of the policy decisions of the Nebraska Legislature. The best or fairest scope of the homestead exemption is a political question not for this court. But this court can question whether the purpose of Nebraska's homestead exemption is still to "conserve the family" – at least as the meaning of "family" was understood in the days of *Meisner v. Hill*. For example, two unmarried roommates sharing expenses who own property together can collectively claim $240,000, even if they do not consider themselves a "family". A married couple with three kids can claim the same $240,000. But the widow and her three children can only claim $120,000. The other $120,000 of their family's exemption vanished after the widow's spouse died. When their family needs protection the most, they get the least. Chasing fairness appears easy. Achieving fairness? Perhaps not so much.

Extent of Impairment.

*Id.* at 1140.

The debtor's interest in the property is one-half its stipulated total value of $312,000. The debtor's wife has a marital interest in the other half even though she is not listed on the title to the real estate. *See Parker v. Parker*, 681 N.W.2d 735, 744 (Neb. 2004) ("[A] lien of judgment does not attach to the mere legal title where the equitable and beneficial interest is in another."); *Scoular Grain Co. v. Pioneer Valley Sav. Bank*, 447 N.W.2d 38, 40 (Neb. 1989) ("[A] judgment lien on real estate in the name of the judgment debtor is a lien only on the actual interest of the judgment debtor and is subject to all existing equities whether of record or not."). "The extent of the impairment is the amount that a creditor's lien will be avoided." *See Sawyers*, 2 F.4th at 1140. Applying the formula:

| | |
|---|---|
| Judicial Lien | $ 346,185.49 |
| PLUS SFCU lien | $     9,040.14 |
| PLUS Rocket Mortgage lien | $ 135,220.51 |
| PLUS Homestead exemption | $ 120,000.00 |
| Total | $ 610,446.14 |
| LESS Value of debtor's interest | $ 156,000.00 |
| EQUALS Extent of impairment | $ 454,446.14 |

The extent of impairment is greater than the total of all judgment liens. Therefore, Hospodka's lien is avoided in full.

Dated: October 3, 2025

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge